577 P.2d 255

**ARIZONA STATE LAND DEPART-
MENT, Andrew L. Bettwy,
Commissioner, Appellant,**

v.

**R. H. FULTON, INCORPORATED, a Tex-
as Corporation and Black Mesa Pipe-
line, Inc., an Arizona Corporation, Ap-
pellees.**

No. 1 CA–CIV 3521.

Court of Appeals of Arizona,
Division 1,
Department B.

Jan. 31, 1978.

Rehearing Denied March 16, 1978.

Review Denied April 11, 1978.

Bruce E. Babbitt, Atty. Gen. by Peter C. Gulatto, Asst. Atty. Gen., Phoenix, for appellant.

Stevenson, Warden & Smith by William W. Stevenson, Flagstaff, for appellees.

## OPINION

WREN, Judge.

Plaintiff, Arizona State Land Department, brought suit against the defendants, R. H. Fulton, Inc. and Black Mesa Pipeline, Inc., alleging willful trespass onto State School Trust Lands and sought treble damages in the amount of $52,923.60 for the value of 58,804 cubic yards of pipeline pad materials, earthen products, removed by the defendants from State lands. The action was brought pursuant to A.R.S. § 37–501(2) which defines, in part, acts which constitute trespass upon State lands, and A.R.S. § 37–502(A) which creates civil liability for trespass upon State lands, and provides for the recovery of treble damages in the case of willful trespass. Defendants moved for summary judgment, arguing that A.R.S. § 37–502(C) limited the Department's potential recovery to the rate per acre of the carrying capacity of the land upon which the trespass occurred rather than treble the value of the materials removed. The trial court granted partial summary judgment, ruling the Department could not recover treble damages but that the complaint justified proof of the value of the material removed. Thereafter, prior to trial, the trial court reconsidered its previous order and limited the Department's proof of dam-

ages to the loss of carrying capacity of the lands on which the trespass occurred. At trial the department by offer of proof presented evidence of the value of the material removed. Since no evidence was presented with respect to the loss in value of the carrying capacity of the land judgment was entered in favor of the defendant and this appeal followed.

The issue with which we are concerned is whether A.R.S. § 37–502(C) places an invalid limitation on the damages recoverable for removal of natural products from lands acquired by the State of Arizona under its Enabling Act by grant from the United States. We note that Article 10, §§ 1–8 of the Arizona Constitution, repeats the provisions of § 28 of the Enabling Act and therefore violation of § 28 of the Act is necessarily a violation of Art. 10 of our Constitution.

At the time of statehood the Enabling Act granted the State of Arizona certain lands, belonging to the United States government, for the support of common schools and for other designated purposes. Section 28 of the Act requires the granted lands be held in trust by the State and specifically prescribes the manner in which the lands and funds derived therefrom may be disposed. Under § 28 of the Act disposition of any of the lands "or thing of value directly or indirectly derived therefrom, . . . in any manner contrary to the provisions of this Act, shall be deemed a breach of trust." It further states that trust lands "shall not be sold or leased, in whole or in part, except to the highest and best bidder at a public auction . . . ." It further provides "nor shall any sale or contract for the sale of any timber or other natural product of such lands be made, save at the place, in the manner, and after the notice by publication provided for sales and leases of the lands themselves." The Act also requires "[a]ll lands, . . . and other products of land, before being offered, shall be appraised at their true value, and no sale or other disposal thereof shall be made for a consideration less than the value so ascertained, . . . ." Finally, the Act provides that

"[E]very sale, lease, conveyance, or contract of or concerning any of the lands hereby granted or confirmed, or the use thereof *or the natural products thereof*, not made in substantial conformity with the provisions of this Act shall be null and void, any provisions of the constitution or laws of the said State to the contrary notwithstanding." (Emphasis added.)

The restrictions and prohibitions contained in § 28 were intended to insure that the trust beneficiaries receive the full and only profit from the disposition of property under the trust. *Lassen v. Arizona*, 385 U.S. 458, 87 S.Ct. 584, 17 L.Ed.2d 515 (1967).

"The Enabling Act unequivocally demands both that the trust receive the full value of any lands transferred from it and that any funds received be employed only for the purposes for which the land was given. . . . All these restrictions in combination indicate Congress' concern both that the grants provide the most substantial support possible to the beneficiaries and that only those beneficiaries profit from the trust.

.    .    .    .    .

"[T]he purposes of Congress require that the Act's designated beneficiaries 'derive the full benefit' of the grant." *Lassen v. Arizona*, 385 U.S. at 466–468, 87 S.Ct. at 588–589, 17 L.Ed.2d at 521–522.

Although the Enabling Act sets forth the procedures by which the State of Arizona may dispose of trust lands and their products, it does not refer to situations of the sort now under consideration in which trust property has been illegally removed and the State thereafter seeks reimbursement for the trust. Where the Act is silent it is necessary to implement procedures to insure the purposes of the Act are fulfilled and that the trust recover full and fair compensation for the materials removed. *Cf. Lassen v. Arizona.* In this regard we are obliged to examine the validity of the statutory remedy created by our legislature to determine whether it provides the necessary protection for the trust and trust beneficiaries.

A.R.S. § 37–502 states:

"A. Whoever commits any trespass upon state lands as defined by § 37–501 is also liable in a civil action brought in the name of the state in the county in which the trespass was committed, for three times the amount of the damage caused by the trespass, if the trespass was wilful, but for single damages only if casual or involuntary.

B. When unfenced state land is included within a fenced range, it is prima facie evidence of wilful trespass to permit the grazing of livestock thereon, unless the person accused has an application pending for leasing the lands or the lands are then leased to some other person.

C. *The damage provided for in this section is the rate per acre as determined for the year for the appraised carrying capacity of the lands.*

D. The state land department may also, without legal process, seize and take any product or property unlawfully severed from the land whether it has been removed from the land or not, and may dispose of the product or property so seized in the manner prescribed by law for disposing of products of state lands.

E. The county officers of the several counties shall report to the department any trespass upon state lands which comes to their knowledge." (Emphasis added.)

■ While the Department sought to recover treble the value of the material removed under subsection (A) of A.R.S. § 37–502, the trial court limited it to the damages provided in subsection (C), that is, the "carrying capacity of the lands." The "average annual carrying capacity" is defined as "the average number of animal units which can be supported by a section of grazing land with due consideration for sustained production of the forage consistent with conservative range management." A.R.S. § 37–101(3). Since there is no evidence that the reduction in carrying capacity of the lands bears any relation to the value of the materials removed, the limitation in subsection (C) on the damages recov-

erable for trespass upon State lands fails to insure the trust will receive full and fair value for the materials taken. For this reason the limitation upon the Department's recovery in A.R.S. § 37–502(C) contravenes § 28 of the Enabling Act, Art. 10 of the Arizona Constitution, is a breach of trust and must be considered void if it is construed to limit the Department's recovery to the loss in carrying capacity for removal of products from State Trust lands.

■ We believe, however, that A.R.S. § 37–502(C) is susceptible to a construction which avoids conflict with the Enabling Act and the Constitution. In interpreting a statute we must seek a sensible construction which accomplishes the legislature's intention and, if possible, avoids absurd results. *State v. Cain*, 27 Ariz.App. 441, 555 P.2d 1129 (1976). In doing so we will look to the context of the statute, the language used, its subject matter and the spirit and purpose of the law. *State v. Vondohlen*, 24 Ariz.App. 362, 538 P.2d 1163 (1975).

The provisions contained in subsection (A), (D) and (E) of A.R.S. § 37–502 were first enacted in 1915. Laws of 1915, Second Spec. Sess., Ch. 5, §§ 82 to 84. In 1952 subsections (B) and (C) were added to the statute and the original provisions, now subsections (A), (D) and (E), were retained. Laws of 1952, Ch. 117, § 8; § 11–702, A.C.A. 1939 (Supp.1952). At the same time the provisions of A.R.S. § 37–501, which defines certain acts on State lands as trespasses and designates them misdemeanors, were also amended. Prior to the 1952 amendment, the statute contained a proviso that the section should not prohibit the grazing of livestock upon unfenced or open State lands. Laws of 1915, Second Spec. Sess., Ch. 5, § 81. This proviso was excised in 1952 and the statute amended to make the grazing of livestock on State lands, without an application pending for the leasing of such lands or unless leased to any other person, a trespass and a misdemeanor. Laws of 1952, Ch. 117, § 7; § 11–701, A.C.A. 1939 (Supp.1952). The 1952 amendatory provisions in §§ 11–701 and 11–702, A.C.A. 1939 (Supp.1952), now A.R.S. §§ 37–

501 and 37–502, were clearly related. The amendment of what is now A.R.S. § 37–501(1) in 1952 made the grazing of livestock upon State lands, in some instances, a misdemeanor and a trespass. The 1952 addition of subsection (B) to A.R.S. § 37–502 made the grazing of livestock on unfenced State land within a fenced range in some cases prima facie evidence of willful trespass. Finally, the 1952 addition of subsection (C) to A.R.S. § 37–502, with its reference to the carrying capacity of the lands, appears to us to have been specifically enacted to deal with the measure of damages recoverable for the new form of trespass, the grazing of livestock upon State land.

■ We think the rule expressed in *State v. Cassius*, 110 Ariz. 485, 520 P.2d 1109 (1974), *cert. dismissed*, 420 U.S. 514, 95 S.Ct. 1345, 43 L.Ed.2d 362 (1975), applies to the case now under consideration. It was there stated that where a statute first expresses a general intent, and later an inconsistent particular intent, such particular intent will be taken as an exception to the general intent and both will stand. *State v. Cassius*. With respect to A.R.S. § 37–502, we believe that the provisions of subsection (A) express the general intent of the legislature to create a civil cause of action for trespass upon State lands and to provide for the recovery of general single or treble damages, depending upon the circumstances of the trespass; the measure of damages being commensurate with the trespass committed. The damage limitation contained in subsection (C) is particularly intended to provide a method for ascertaining the damages incurred where a trespass is committed by grazing livestock upon State land.

In summary, A.R.S. § 37–502(C) merely prescribed the mode for determining damages in instances where damages are sought for trespass by grazing livestock on State land. In all other cases of trespass damages are to be determined pursuant to A.R.S. § 37–502(A) and may be ascertained in any appropriate manner. This construction of A.R.S. § 37–502 permits full reimbursement to the State School Trust Fund for damages caused by trespass on trust

lands and is therefore consistent with the spirit and purposes of § 28 of the Enabling Act and Art. 10 of the Arizona Constitution.

 For the reasons stated above, the ruling of the superior court limiting the Department's recovery to the measure of damages provided in A.R.S. § 37–502(C) is reversed. The case is remanded for further proceedings not inconsistent with this opinion.

EUBANK, P. J., and JACOBSON, J., concurring.